## Case No. 11,978.

### In re ROCKFORD, R. I. & ST. L. R. CO.

### In re McKAY et al.

[1 Lowell, 345; [1] 3 N. B. R. 50 (Quarto, 12);
2 Am. Law T. 105; 1 Chi. Leg. News,
337; 1 Am. Law T. Rep. Bankr. 133.]

District Court, D. Massachusetts.   July, 1869.

BANKRUPTCY—RIGHTS OF ASSIGNEE—ESTOPPEL.

1. Assignees in bankruptcy stand no better than the bankrupts in respect to the assets excepting in cases of fraud or of attachments of less than four months' standing. Where, therefore, the bankrupts, manufacturers of locomotive engines, would have been estopped to deny that a particular engine in their shop was the property of a particular customer, the assignees will be equally estopped.

[Cited in Re McKenna, 9 Fed. 34.]

[Cited in Dugan v. Nichols, 125 Mass. 46; Chace v. Chapin, 130 Mass. 131; Holmes v. Winchester, 133 Mass. 142; Rowe v. Page, 54 N. H. 195.]

2. Where the manufacturers obtained their pay for an engine, on the false representation that it had been finished and delivered to a carrier to be delivered to the customer, and they afterwards built such an engine as had been ordered, and marked it with the customer's name, but had not sent it from the shop at the time of their bankruptcy, *held*, that the customer had acquired a title to the engine by estoppel, which he might enforce against the assignee in bankruptcy.

[Cited in Rowe v. Page, 54 N. H. 195.]

Petition that the assignees of the bankrupts be required to deliver an engine in their possession. The bankrupts, through Nathaniel McKay, the business partner, who did all the acts, and conducted all the correspondence hereinafter mentioned, made an oral contract in the city of New York, on or about the 1st of September, 1868, to build a locomotive engine for the petitioners, a railroad corporation established in the state of ———, whose principal business office was in the city of New York, where Mr. Boody, their treasurer resided. The terms of the contract were not very fully disclosed by the evidence, but from the subsequent dealings of the parties, it is to be inferred that the engine was to be finished as soon as practicable, and dispatched to the road of the petitioners, and to be paid for in cash at the same time. On the 3d of September, the bankrupts wrote to the president of the company that they were at work on the engine, and would finish it with all possible dispatch. On the 3d of November, they wrote to the treasurer that they had drawn on him at sight for $9,000, as the amount due for the engine, and had forwarded the receipt and invoice. This paper, called receipt and invoice, was not produced, but it appears by the correspondence to have been a paper purporting to be signed by a transportation company for the delivery of the engine at Cedar Rapids. Mr. Boody replied on the next day that he had received and paid the draft, but that there was a mistake in the

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

bill of lading, which should have been for Chicago instead of Cedar Rapids. The bankrupts replied on the next day that they had corrected the mistake, and had ordered the engine to be sent to the proper address. On the 4th of December, Mr. Boody wrote that the engine had not yet arrived, and asked McKay to trace it and hurry it forward. On the 14th he wrote again, and complained that six weeks had passed since the engine was shipped, and it had not arrived, and that he thought the transportation company were liable in damages. On the same day, McKay & Aldus wrote him that they had had some trouble in their business, which had caused the delay; that this was now all over, and the engine would go forward the next day. December 15, Mr. Boody replies: "I am glad to be informed that our engine will go forward to-day. I am at a loss, however, to understand how trouble in your business should affect the delivery by the Sol. Tr. Co. of an engine receipted for by them six weeks ago, and which was in no sense whatever your property." At what precise time this letter was mailed did not appear. On the same day, McKay & Aldus filed their petition in this court on which they were adjudged bankrupts; and this proceeding was against their assignees, to have the engine delivered up to the railroad company. It appeared at the hearing that McKay & Aldus had not finished this engine on the 4th of November, and, indeed, that it did not then exist as an engine; and it did not appear that they then had any engine corresponding to the order, or that any was ever delivered, formally or otherwise, to the transportation company. During November they were at work on two engines, precisely alike, either of which would have answered the contract. When the first was nearly finished, Mr. McKay at one time expressed an intention to send it to the petitioners, but did not do so, and delivered it to the Hartford & Erie Railroad Company of Boston. The engine now in question was afterwards proceeded with rapidly, and was known in the shop as the Boody engine, and was marked with the name of the petitioners. On Saturday, the 5th December, it was within a few hours of completion, and would have been finished that day, and shipped on the Monday following, but for an injunction which was issued out of this court upon a petition of creditors asking for an adjudication of bankruptcy against the firm. On the 14th day of December, the petitioning creditors' attorney agreed with the attorney of the bankrupts that the injunction should be so far modified as to release this engine, and it was then finished, or substantially so; but afterwards a creditor attached it, under the state law, and it could not be shipped. After the voluntary petition was filed, the proceedings in invitum were given up, and the assignees were elected under the former, so that their title related to the 15th of December. After the bankruptcy, and be-

fore the appointment of assignees, Mr. Boody's son came to Boston and demanded the engine, by the authority and in the name of the petitioners, but was not allowed to take possession of it.

H. W. Paine, for petitioners.

D. Foster, for assignees.

LOWELL, District Judge. The question presented is, whether the title to this chattel is in the petitioners or the respondents. The assignees of McKay & Aldus have the same rights, and no more, as the bankrupts had. They take subject to all liens, incumbrances, and equities, in the same manner as executors, excepting that, by the terms of the statute, liens by attachment are dissolved unless they have been standing for four months, and that assignees may set aside all conveyances made in fraud of the general body of the creditors. The question, therefore, is whether, as between the bankrupts and the petitioners, the title had passed on the 15th of December. The property in a chattel passes whenever, by a valid contract, the owner undertakes that it shall pass; but the chattel must be in existence, and must be capable of being distinguished from other like chattels, before the title will change, because until that time there is no definite subject upon which the contract can operate. In the case of a contract to manufacture a chattel, the general rule is, that the property does not pass until it has been finished, and until the maker has in some manner appropriated it or set it apart for the particular customer, and the latter has accepted it. It is said that until this is done, the manufacturer, on the one hand, may deliver the article to any other customer, and the purchaser, on the other hand, may reject it if it do not conform to the order. The question in the late cases has therefore been of a definite appropriation on the one side, assented to on the other: Carruthers v. Payne, 5 Bing. 270; Wilkins v. Bromhead, 6 Man. & G. 963; Elliott v. Pybus, 10 Bing. 512; Rhode v. Thwaites, 6 Barn. & C. 388; Benj. Sales, pp. 260, 268, 270. Every thing depends, however, on the contract, and if the parties choose to agree that the property shall pass before the work is complete, they can do so; and this may be implied as well as expressed. Thus in those cases of ships paid for by instalments, of which Woods v. Russell, 5 Barn. & Ald. 942, was the first, such an inference has been derived from the mode of payment and other circumstances; and however any of those cases may have been criticised, they are not open to any just remark in matter of principle, but only upon the propriety of its application in the particular case. The agreement to pass the title may have been inferred too hastily, but the competency of the parties to make such an agreement cannot be questioned.

There may be cases, of course, in which the manufacturer would have no right to appropriate the goods to another customer, as in the instance of a portrait painted to order; and there may be others where the purchaser may have waived his right to reject the article, and have left it to the judgment and honesty of the maker to comply with the terms of the bargain. If both these elements concur, there is no reason why the property should not vest in the purchaser on the completion of the work. It is not denied, that if this engine had been made on the 4th of November, the title would have passed; but it is said the minds of the parties never met in relation to this identical engine. It may be maintained with some force, that the petitioners having been induced by the misrepresentation of the bankrupts to accept the chattel before it was finished, that when it was finished, and the petitioners were notified that it would be sent away, the title was complete by relation to the former acceptance.

But there is another view which seems to me to establish a title in the petitioners by estoppel. The bankrupts and their assignees cannot deny that there was an engine finished and set apart for these petitioners, and paid for by them early in November. Here is such an engine. If this is not the engine referred to in the correspondence, it is for them to show the other which was. Suppose the bankrupts had never built any other engine like this, would they not be estopped by their acts and correspondence to deny that this chattel was complete on the 4th of November? The fact that there were two chattels precisely alike does not embarrass the case at all. If, when both were in the bankrupts' machine shop, the petitioners had demanded one in particular, the bankrupts could not have been permitted to say that neither had been appropriated to this contract, because it was on the distinct statement that one had been appropriated, by being pointed out and delivered in some way to the transportation company, that they had obtained payment of the price; and so, to defeat an action for the one, they must have been able to show that it was the other that was so appropriated. This they cannot do here, for the contrary is the truth. The argument was, that the estoppel could not apply to a chattel not in esse when the misrepresentation was made. But the foregoing consideration appears to be a sufficient answer, namely, that the assignees are estopped to say that it was not in esse unless they show some other engine to which the representation applied.

Petition granted.